IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIAM BUCK, #R21689,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 18-cv-2125-SMY |
| | ) |
| **SGT RIGDON,** | ) |
| **C/O PUXDOM,** | ) |
| **C/O EDWARDS,** | ) |
| **C/O MALLORY,** | ) |
| **C/O HALLE,** | ) |
| **C/O WEAVER,** | ) |
| **JUSTIN HUNZIKER,** | ) |
| **LT. SAMUELS,** | ) |
| **JEFFREY GARDINER,** | ) |
| **LANCE PHELPS,** | ) |
| **MELISSA PAPPAS,** | ) |
| **and CHELSEA REGELSPERGER,** | ) |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter comes before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 57) filed by Defendants Chelsea Regelsperger and Melissa Pappas. Plaintiff filed a Response (Doc. 61) and Defendants filed a Reply (Doc. 62).[1] For the following reasons, Defendants' Motion is **DENIED**.

### Background

Plaintiff William Buck is an inmate of the Illinois Department of Corrections ("IDOC"). He filed this lawsuit pursuant to 42 U.S.C. §1983, alleging that on June 16, 2017, he was assaulted

---

[1] Because the pleadings reveal there are no factual disputes between the parties on exhaustion, this Court did not hold a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

by guards at Menard Correctional Center ("Menard") and subsequently denied medical and mental health treatment. Several claims survived threshold review pursuant to 28 U.S.C. § 1915A, including Count 5 against Defendants Chelsea Regelsperger, Melissa Pappas, Phelps and Gardiner, alleging they failed to provide Plaintiff medical and mental health treatment following the assault on June 16, 2017 (Doc. 7).[2]

Regelsperger and Pappas filed the instant Motion claiming Plaintiff never named or otherwise identified them in grievances and therefore failed to exhaust his administrative remedies against them.  Plaintiff argues that although he did not name them, he adequately conveyed that he was denied mental health treatment following the alleged assault.

## Facts

There are two relevant grievances at issue, both filed after Plaintiff had been transferred to Pontiac Correctional Center ("Pontiac").  On July 7, 2017, Plaintiff filed an emergency grievance (Grievance #066201) in which he described the staff assault after a suicide attempt and stated that he was taken to the Health Care Unit ("HCU") where a woman told the correctional officers to take him away.  (Doc. 58-2, pp. 4-5).  He asserts that as a result, he received "no treatment nor saw Mental Health."  (*Id.*, p. 5).  He details further assaults, his transfer to Pontiac and mistreatment there.  (*Id.*). This grievance was marked as received on July 13, 2017.  The Chief Administrative Officer determined that it was not an emergency.  (*Id.*, p. 4).  Despite being deemed non-emergency, the grievance was reviewed by a grievance officer who recommended the grievance be denied as moot due to a previously-filed Prison Rape Elimination Act ("PREA") complaint and investigation.  (*Id.*, p. 2).  Pontiac's Chief Administrative Officer ("CAO") concurred on July 21,

---

[2] In his Complaint, Plaintiff identified Regelsperger and Pappas ("Ms. R" and "Ms. Pappas") as mental health professionals; Regelsperger is a Behavioral Health Technician and Pappas is a Qualified Mental Health Professional. (Docs. 1, 26 and 48).

2017. (*Id.*).

On July 9, 2017, Plaintiff submitted another grievance directly to the Administrative Review Board ("ARB") because he had transferred from Menard to Pontiac Correctional Center. (Doc. 58-1, pp. 13-14). It contained essentially the same allegations as Grievance 066201, stating that following the assault, he was not examined in the healthcare unit "nor was I seen by mental health." (*Id.*, p. 14). Plaintiff's requested relief was "to have this investigated." (*Id.*, p. 13). The ARB received the grievance and sent it to Menard for investigation. (*Id.*, p. 12). On September 7, 2017, the ARB sent Plaintiff a response stating the investigation concluded with a determination that Plaintiff's allegations in his grievance were unfounded and therefore, Plaintiff's grievance was denied. (Doc. 1, p. 27).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

To exhaust his administrative remedies, an inmate in the custody of the Illinois Department of Corrections must submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem. 20 ILL. ADMIN. CODE § 504.810(a). If the issue involves a facility other than the facility where the inmate is currently housed, the inmate must submit the grievance directly to the ARB. 20 ILL. ADMIN. CODE § 504.870(a)(4). The ARB reviews and processes the grievance and issues its decision. 20 ILL. ADMIN. CODE § 504.870(b). The grievance must contain:

> factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.870(b). Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Here, the timing and content of the grievances in question are undisputed. (Docs. 58, 60). Defendants do not assert that Plaintiff failed to fully exhaust at least one of the grievances. The sole question is whether the statements in the grievances were sufficient to encompass Defendants

Regelsperger and Pappas, despite not being specifically named.  Plaintiff points to a sentence in the July 9, 2017 grievance where he states he was taken to the healthcare unit following the alleged rape but was not examined "nor was I seen by mental health."  Defendants acknowledge that they work in the Mental Health Unit at Menard.  They argue, however, that because Plaintiff stated he did not see anyone in Mental Health on June 16, 2017, he could not have been referring to them as subjects of his grievance.

Defendants' argument is unavailing.  Plaintiff's claims Regelsperger and Pappas refused to provide him with mental health care.  Refusing to provide care does not require that a defendant look a prisoner in the eye and explicitly state that she will not treat him.  Moreover, the exhaustion requirement is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it.  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (*citing Jones v. Bock*, 549 U.S. 199, 219 (2007)).  Plaintiff's statement was sufficient to notify prison officials that he was complaining about not receiving mental health care. While the Grievance Procedures require descriptive information regarding individuals, it would be illogical read this as requiring a prisoner to describe who they *didn't* see in the context of a medical staff.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 57) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 21, 2020**

                                                        **s/ Staci M. Yandle**
                                                        **STACI M. YANDLE**
                                                        **United States District Judge**