IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM BUCK, R21689, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SGT. RIGDON, ) | |
| C/O PURDOM, ) | |
| C/O EDWARDS, ) | |
| C/O MALLORY, ) | |
| C/O HOLLE, ) | Case No. 18-cv-2125-DWD |
| C/O WEAVER, ) | |
| HUNZIKER, ) | |
| LT. SAMUELS, ) | |
| LT. GARDINER, ) | |
| I.A. PHELPS, ) | |
| REGELSBERGER, ) | |
| PAPPAS, ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff William Buck, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center ("Menard"). Plaintiff alleges that on June 16, 2017, Defendants Rigdon, Purdom, Edwards, Mallory, Holle, and Weaver used excessive force against him, Samuels failed to intervene, Purdom, Holle, Mallory, and Weaver sexually assaulted him, Gardiner and Phelps failed to get him medical care, Regelsberger and Pappas denied him medical or mental health care, and Hunziker used excessive force against him during transport. These claims align with five claims that were allowed past

initial review.  (Doc. 7).  The case is now before the Court on motions for summary judgment by each party.  (Docs. 141, 165, 162).  The motions are fully briefed.

PROCEDURAL HISTORY

Plaintiff initiated this case by filing a complaint on November 27, 2018.  (Doc. 1 at 19).  Upon initial review, the Court identified seven claims, and allowed the following five claims to proceed:

| | |
|---|---|
| Claim 2: | Purdom, Edwards, Mallory, Holle, Weaver, and Rigdon violated Plaintiff's rights under the Eight Amendment at Menard by using excessive force against him on June 16, 2017; |
| Claim 3: | Purdom, Mallory, Holle, and Weaver violated Plaintiff's rights under the Eighth Amendment at Menard by pulling his pants down and penetrating his anus on June 16, 2017; |
| Claim 4: | Samuels violated Plaintiff's rights under the Eighth Amendment at Menard by failing to intervene and take steps to stop the use of excessive force against him on June 16, 2017; |
| Claim 5: | Regelsberger, Pappas, Phelps, and Gardiner denied Plaintiff adequate medical care for the injuries he sustained in the prison guard assault at Menard on June 16, 2017; |
| Claim 7: | Hunziker violated Plaintiff's rights under the Eighth Amendment by using excessive force against him during his transport to Pontiac on June 16, 2017. |

Claims 1 and 6 were immediately dismissed for failure to state a claim.  (Doc. 7). Additionally, theories of relief under the Fourteenth Amendment and the Prison Rape Elimination Act (PREA) were dismissed as unavailable or duplicative of the Eighth Amendment claims.

The complaint was served upon the defendants, who answered in two groups—the IDOC Defendants (Rigdon, Purdom, Edwards, Mallory, Holle, Weaver, Samuels, Phelps, Gardiner and Hunziker) and the Wexford Defendants (Regelsberger and Pappas). The Wexford Defendants sought summary judgment on the basis that Plaintiff failed to exhaust administrative remedies against Regelsberger and Pappas, but the motion was denied. (Docs. 57, 72). The case then proceeded to merits discovery on all claims.

On December 27, 2021, Plaintiff moved for summary judgment on all claims. (Doc. 141). Both the Wexford (Doc. 147) and the IDOC Defendants (Doc. 159) responded. The Wexford Defendants filed a second motion for summary judgment (Doc. 165), and Plaintiff responded (Doc. 167). Additionally, the IDOC Defendants filed a motion for summary judgment (Doc. 162), and Plaintiff responded (Doc. 168).

## FACTS

Across the motions for summary judgment, there are numerous facts that may be relevant to the case at trial, but that need not be recited here to reach a decision on the pending motions. The evidence submitted and thoroughly reviewed included: declarations from every defendant[1]; Plaintiff's 200-page deposition (Doc. 162-3); excerpts from Plaintiff's criminal trial for assault of Purdom (Doc. 162-2); incident reports from the altercation on June 16, 2017 (Docs. 162-6); a Miranda warning for an interview with

---

[1] Purdom declaration (Doc. 162-1); Rigdon declaration (Doc. 162-4); Samuel declaration (Doc. 162-5); Phelps declaration (Doc. 162-8); Gardiner declaration (Doc. 162-9); Hunziker declaration (Doc. 162-10); Weaver declaration (Doc. 162-11); Holle declaration (Doc. 162-12); Mallory declaration (Doc. 162-13); Edwards declaration (Doc. 162-14); Pappas affidavit (Doc. 165-2); Regelsberger affidavit (Doc. 165-3).

Phelps and Gardiner (doc. 162-7); 88-pages of mental healthcare records (Doc. 165-4); medical records (Doc. 165-5); grievance documentation (Doc. 141-2); Plaintiff's affidavit (Doc. 141-2 at 22); affidavits from six fellow inmates (Doc. 141-2 at 23-28); photographs (Doc. 141-2 at 29-31); the Wexford Defendants' discovery responses (Doc. 141-2 at 32-46); a handful of incident reports and other investigation notes from the facility and the IDOC Defendants' responses to discovery (Doc. 141-2 at 50-77; Doc. 141-3). For the sake of clarity, the Court includes only the most basic facts here to provide context.

On June 16, 2017, Plaintiff was standing in a common area of his cellhouse waiting to gather his property. A fight broke out between another inmate and Defendant Purdom, who were both near Plaintiff. Defendants Edwards and Rigdon were among the first to respond. Rigdon avers that he restrained the other inmate that was involved. Purdom and Edwards worked to restrain Plaintiff. An officer on the catwalk fired one warning shot, with no effect.[2] After a second warning shot Plaintiff was successfully restrained on the ground.

The Defendants allege that Samuels deployed a small amount of pepper spray to help restrain Plaintiff. Plaintiff alleges that even after he was restrained, officers continued to beat him. Additionally, Plaintiff alleges that once he was restrained Defendant Rigdon deployed pepper spray directly on his right eye.[3] At his deposition,

[2] Plaintiff alleges that he yelled at this officer and said something to the extent of "just shoot me," but none of the officers' reports indicate that anyone heard this statement. This allegation is not relevant to the resolution of this motion.

[3] In response to Plaintiff's Motion for Summary Judgment, the Defendants "deny Sgt. Rigdon utilized pepper spray on Plaintiff." (Doc. 159 at 2). However, Rigdon does not say anything about the use of pepper spray in the affidavit submitted in support of the Defendants' own motion for summary judgment. (Doc. 162-4 at 1). One of Plaintiff's fellow inmates, Terrance Bragg, averred that "I saw Sgt. Rigdon after Buck

Plaintiff stated that after Rigdon's pepper spray, the beating ceased.  Once Plaintiff was restrained, Defendants Mallory, Holle and Weaver escorted him out of the cellhouse.  As they exited, Plaintiff alleges that Purdom said something to the effect of "get him in his ass," to which Holle replied they would.  Defendants deny that any such statement was made.

Plaintiff alleges that once outside the cellhouse the three defendants threw him to the ground and continued to attack him with blows, and by an attempt to pull his right eye out.  He also alleges that his pants were pulled down, he felt spit on his buttocks, and something penetrated his anus.  After the alleged sexual assault, he was escorted to the healthcare unit.

At the healthcare unit Plaintiff saw Defendants Regelsberger and Pappas (mental health professionals), who were standing amongst a crowd of medical personnel and guards, but he alleges they did not render medical or mental healthcare.  Plaintiff claims that he was verbally requesting care from anyone present, and that he had obvious injuries.  Plaintiff was quickly escorted to a shower.  He does not allege that anyone physically harmed him after he left the healthcare unit.

At the shower Plaintiff removed his jumpsuit that was covered in pepper spray, though it is disputed whether he had a chance to shower.  He was then taken to see Defendants Gardiner and Phelps of internal affairs at 11:42 a.m..  Plaintiff claims they refused his requests for medical care, though they claim he did not ask for it and had no

---

was handcuffed behind his back defenseless Sgt. Rigdon put a can of pepper spray on the right of Buck face near his ear and eyes and spray."  Plaintiff testified consistent with Bragg's assertion at his deposition.

visible injuries.  Plaintiff allegedly refused to speak with them, and he was escorted to another cell.

After waiting for hours, Plaintiff was escorted by Hunziker to Pontiac.  Plaintiff alleges Hunziker could see his need for medical care, but he refused it both before and after transit.

Plaintiff was convicted in state court of assaulting Purdom.

There are five claims against the remaining defendants, which are grouped as the IDOC Defendants and the Wexford Defendants.  The Court will address each claim one at a time, and additional facts will be provided as necessary.

CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).  Courts generally cannot resolve factual disputes on a motion for summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted).

B. Analysis

Plaintiff filed a motion for summary judgment, wherein he argued that he was entitled to summary judgment on all pending claims.  His motion is supported with evidence.  The Court did not find that it was beyond genuine dispute that any of the claims could be resolved on the evidence presented in Plaintiff's favor as a matter of law, so it will not individually discuss Plaintiff's motion in the analysis.  Plaintiff's Motion will be **DENIED**.  However, in an effort to defer broadly to Plaintiff as a pro se litigant, the Court considered arguments and evidence that he presented in his summary judgment pleadings alongside his responses that he filed to Defendants' motions.  In this way, the record was read as broadly as possible in Plaintiff's favor.

     i.     Claim 2:    Purdom, Edwards, Mallory, Holle, Weaver, and Rigdon violated Plaintiff's rights under the Eight Amendment at Menard by using excessive force against him on June 16, 2017;

Plaintiff argues that the defendants should be held liable for assaulting him at Menard because the defendants attacked him without provocation during a mental health crisis.  In support of his position, Plaintiff's strongest evidence is his deposition testimony, his own affidavit, and an affidavit from a fellow inmate who witnessed the physical altercation in the cellhouse.  The Defendants argue that this claim should be barred to the extent that Plaintiff seeks to undermine his conviction in state court for assaulting Purdom.  If all or part of the claim is found not to be barred, they alternatively argue that they only used force necessary to restrain Plaintiff.  Plaintiff counters that he

should be allowed to maintain a claim for excessive force for conduct that far exceeded what he believed was necessary to restrain him.

This claim presents a difficult legal issue. *Heck v. Humphrey*, 512 U.S. 477 (1994), holds that the plaintiff in an action under 42 U.S.C. § 1983 may not pursue a claim for relief that implies the invalidity of a criminal conviction, unless that conviction has been set aside by appeal, collateral review, or pardon. A civil claim may be barred by *Heck* if success on the claim necessarily implies the invalidity of the underlying criminal conviction. However, a claim is not barred by *Heck* merely because it concerns an interaction or event that led to a criminal conviction. For example, a plaintiff may be able to bring a civil claim for excessive force against officers whom he was convicted of assaulting, if he does not attack the facts and findings that support the assault conviction, and he instead focuses on discrete conduct separate from the assault.

In *Gilbert v. Cook*, an inmate was found guilty of punching officers thru the chuckhole of his cell while they removed handcuffs and he attempted to bring an excessive force claim against the officers for subsequently yanking his hands through the chuckhole, breaking his arm, and removing skin. 512 F.3d 899 (7th Cir. 2008). The trial court prevented plaintiff from producing any evidence about what happened after the punch through the chuck hole because Plaintiff attempted to proceed without admitting or denying the punch. The Seventh Circuit found that if plaintiff had conceded that he punched the guard, he would have then had clear sailing because "[a] contention that a guard struck back after being hit is compatible with *Heck*." *Id.* at 901. The *Gilbert* Court went on to conclude that the trial court should have given a jury instruction that plaintiff

struck a guard first, and then the court should have allowed the jury to decide whether the guards used excessive force beyond that point. *Id.* at 902.

In a similar case, an inmate alleged that he spoke with a guard who attempted to provoke him, he then sat down in the chow hall and the guard approached him, continued to provoke him, and ultimately started a fight. *Moore v. Mahone*, 652 F.3d 722 (7th Cir. 2011). Plaintiff was found guilty by the prison disciplinary board of assault on the guard and disobeying a direct order. The district court dismissed the plaintiff's excessive force claim as barred by *Heck* because in his pleadings, the plaintiff's factual assertions were at odds with the finding of the disciplinary board. The Seventh Circuit found that, although plaintiff contested the disciplinary board findings in his complaint, the district court could have ignored factual allegations that invoked *Heck* or it could have dismissed the claim without prejudice, allowing plaintiff an opportunity to present it in a fashion consistent with *Gilbert. Id.* at 725-26.

In *Tolliver v. City of Chicago*, a man was found guilty of aggravated battery of a peace officer because an officer injured himself when he tried to move out of the way of Plaintiff's car as it rolled towards him. 820 F.3d 237 (7th Cir. 2016). The elements of aggravated assault required a showing that: 1) he knew the injured party was a peace officer performing official duty; and he (2) intentionally or knowingly; (3) voluntarily; (4) without legal justification; (5) caused bodily harm to the officer. On summary judgment, plaintiff contended that he had no intention of driving towards the officer, but instead he fell over causing his car to roll forward without his knowledge or ability to control it. The district court found that any such claim was *Heck* barred. The Seventh Circuit agreed that

although there theoretically could have been a claim made without undermining the conviction, the claim plaintiff chose to make directly undermined his conviction because it negated the mental elements of the offense he pled guilty to. *Id.* at 244. "If Tolliver had conceded that he voluntarily and intentionally or knowingly drove towards the officers, or if Tolliver had even remained agnostic on who struck the first blow, he could have brought a claim that the officers' response of firing fourteen bullets at him constituted excessive force and that claim would not be barred by *Heck*." *Id.* at 244.

Plaintiff's case walks the fine line illustrated in *Gilbert, Moore* and *Tolliver.* Some of his pleadings and deposition testimony are at odds with his conviction for assaulting Purdom. However, as with these three cases, Plaintiff could theoretically admit that he engaged in a physical altercation with the guards, but that actions taken by guards in that altercation were excessive. Plaintiff indicates a desire to take such a position in response to summary judgment. A close examination of the factual allegations is necessary.

Plaintiff was convicted in state court of aggravated battery in violation of 720 ILCS § 5/12-3.05 for his assault on Defendant Purdom. Section 5/12-30.05(d)(4) provides that a person commits the act of aggravated battery when he knows the individual battered to be a correctional institution employee. This is the same statute that was at issue in *Tolliver.* In his own motion for summary judgment, at his deposition, and via supporting evidence, Plaintiff clearly contends that he did not strike anyone. He stated,

> P: A whole bunch of them came in. They started—that's when I got attacked. It wasn't long—it wasn't—after they started attacking [the other inmate], one of the officers called on the radio and they flooded in and they just started—they attacked me too. Because I was tweaking a little bit, I was bugged up, I didn't take my psych meds.

So the tower dudes point the gun, shoot the gun, I'm telling him to shoot me. So they started attacking me too.

Q: So you turn and see the guards and [the other inmate] in a scuffle. What did you personally do?

P: I didn't do nothing. I'm standing there. I looked. Then once the buzzer went off, officers started coming in. The tower dude shot the gun, pointed it at—I told him to shoot me. That's basically all I did. Then they started beating on me.

[…]

Q: Did you hit anyone?

P: No. I didn't even have a chance to.

Q: Did you jump into the fight to try to help [the other inmate]?

P: I just told you. No. I couldn't even—I didn't have a chance to.

(Plaintiff's Deposition, Doc. 162-3 at 60-62). Plaintiff also wrote in his own Motion for Summary Judgment, "[t]he defendants claim Plaintiff assaulted them and nobody attacked Plaintiff is not supported by any independent credible evidence. The clear and undisputed evidence is after the defendants did what they did they tried to cover for each other by filing false reports." (Doc. 141 at 1-2). An affidavit from fellow inmate Terrance Bragg states that he saw the correctional officers begin to hit both the other inmate and Plaintiff, he saw Purdom and Edwards start hitting Plaintiff, and he saw others rush in to help with the attack. (Doc. 141-2 at 28).

These excerpts of evidence, and Plaintiff's arguments, contradict his conviction in state court for an assault against Defendant Purdom.[4] As Plaintiff explains it in this case,

---

[4] Plaintiff alleges in response to the IDOC Defendants' motion for summary judgment that his state court conviction has been returned by the appellate court to the trial court, but the evidence he submitted in

he was an innocent bystander who was attacked by a swarm of correctional officers. He "didn't even have a chance," to land a blow on any of the officers. This version of events cannot be squared with the version that alleges officers engaged with Plaintiff and ultimately restrained him *because* he struck Purdom. Although Plaintiff could have accepted that he struck Purdom and argued that the officers who restrained him used force far greater than necessary to accomplish restraint, his argument is not so neat. Plaintiff has placed himself in a situation strikingly similar to the plaintiff in the *Tolliver* case. Like the Plaintiff in *Tolliver*, Plaintiff's version of events as presented in this case, makes his conviction impossible. Plaintiff's arguments about any contact by the defendants while effectuating his restraint will not be allowed under *Heck* and *Tolliver*.

Despite Plaintiff's contentions about how the physical altercation began, which the Court will not entertain, Plaintiff also alleges that he was gratuitously hit and physically abused *after* he had been restrained and taken to the ground. In his affidavit, and in Bragg's affidavit, there are allegations that the officers continued to punch, knee, and kick him after he was restrained. Bragg avers that after Plaintiff was handcuffed, he saw Defendant Rigdon use pepper spray right by Plaintiff's eye, and he saw Purdom, Weaver, Mallory, and Edwards continue to hit and knee Plaintiff after he was restrained on the ground. Defendants contend that pepper spray was used before he was handcuffed, but there is no clear consensus on whether pepper spray was also used after the handcuffing. The timing and appropriateness of the pepper spray are in genuine dispute, as is the

---

support of this contention shows that his appeal was dismissed as prematurely filed. (Doc. 168 at 8). Thus, the appellate court's order did not overturn his conviction and does not impact the *Heck* analysis.

assertion that Plaintiff was gratuitously hit after he was restrained.   Accordingly, the Court cannot grant summary judgment to Purdom, Rigdon, Edwards, Mallory, Holle, or Weaver concerning any alleged use of excessive force after restraints were implemented.

ii.     Claim 3:     Purdom, Mallory, Holle, and Weaver violated Plaintiff's rights under the Eighth Amendment at Menard by pulling his pants down and penetrating his anus on June 16, 2017;

The Court also cannot grant summary judgment concerning the conduct that transpired once Mallory, Holle, and Weaver escorted Plaintiff out of the cellhouse.  There are genuine disputes about whether these individuals continued physical abuse, and whether they sexually abused Plaintiff.  Claim 3 of the lawsuit, shall proceed against Mallory, Holle and Weaver.

By contrast,  Claim 3 shall not proceed against Defendant Purdom, because there is no allegation that he left the cellhouse and personally participated in any sexual abuse. As the defendants accurately argue, verbal harassment, even harassment that is sexual in nature rarely rises to the level of excessive force.  *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (most verbal harassment does not rise to the level of an Eighth Amendment violation, although, when frequent, or when coupled with other cues, it could rise to the level of a constitutional violation).  Even assuming Purdom yelled sexually suggestive language as Plaintiff left the cellhouse, this is not sufficient to maintain Claim 3 against Purdom concerning alleged harassment.  Summary judgment will be granted only as to Purdom on Claim 3.  Claim 3 will proceed against Mallory, Holle, and Weaver because the facts are directly contested.

iii.    Claim 4:    Samuels violated Plaintiff's rights under the Eighth Amendment at Menard by failing to intervene and take steps to stop the use of excessive force against him on June 16, 2017;

The Defendants also argue that Samuels is entitled to summary judgment because the only claim against him is failure to intervene.  Defendants argue that Samuels did not witness any excessive force, and he was not present during the walk from the cellhouse to the healthcare unit, so even if there was any conduct during that walk, Samuels could not have stopped it.  Plaintiff counters that Samuels pepper sprayed him, Samuels did not identify who actually handcuffed him in incident reports, Samuels could not explain his injuries, and Samuels did not direct anyone to remove the pepper spray.

A bystander officer may be held liable under § 1983 if the plaintiff can establish that the officer: "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (cleaned up).

Construing the record in favor of Plaintiff, as the Court must do at summary judgment, there is not a genuine dispute of fact concerning Samuels' alleged failure to

intervene.  Plaintiff makes much of the fact that Samuels pepper sprayed him and admitted that he did not have the pepper washed off, but these assertions are irrelevant to a claim of failure to intervene.  What matters for a failure to intervene is whether Samuels was aware of excessive force being used against Plaintiff, and whether he had an opportunity to stop it.  The record does not support a finding in Plaintiff's favor on either of these issues.  Samuels stated in his affidavit and in his response to Plaintiff's Requests for Admissions that he did not witness any excessive force used against Plaintiff.  The available facts suggest that Samuels arrived after the fight had begun, and he deployed pepper spray to help gain control of Plaintiff.  There is no evidence to prove that Samuels saw any excessive force conduct transpire, or that he had a chance to stop it.  Accordingly, the Court will grant summary judgment in favor of Samuels.

  iv.  Claim 5:  Phelps, and Gardiner denied Plaintiff adequate medical care for the injuries he sustained in the prison guard assault at Menard on June 16, 2017;

    Defendants Phelps and Gardiner argue that they are entitled to summary judgment because Plaintiff did not have any obvious injuries, and they were under the impression that he had just seen the medical unit prior to their attempted interview.  Plaintiff's own account of their encounter directly contradicts these assertions.

    "The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or

delaying access to medical care.'" *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  To state a claim for deliberate indifference, a prisoner must show that he suffered from an objectively serious medical condition, and that the defendant was deliberately indifferent to a risk of serious harm from that condition.  *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).  An objectively serious condition can be shown via evidence of a condition that a physician has diagnosed as requiring treatment, or by evidence of a condition for which the need for treatment would be obvious to a layperson.  *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019).  "A condition can be obvious to a layperson even where he or she is unable to diagnose or properly identify the cause of an observed ailment."  *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017).

"[A] guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment is likewise exhibiting deliberate indifference.  He knows the prisoner may be suffering and knows whom to call to attend to the matter." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015).  If a prisoner is clearly in agony, a guard cannot ignore him on the ground of not being a doctor, he has to make an effort to find a medical professional.  *Id.* at 941 (finding that a guard who refused help for a tooth abscess did not qualify for summary judgment concerning deliberate indifference to a serious medical need).  A prisoner must show that the prison official was both aware of a substantial risk of harm, and he or she actually drew the inference that a substantial risk of harm existed.  *Orlowski*, 872 F.3d at 423.  A prison official acts with a sufficiently culpable state of mind if he or she "effectively condones the harm by allowing it to

happen." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021).  "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or *unnecessarily prolonged his pain*," and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (*citing Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).  In *Lewis*, the Seventh Circuit found that summary judgment should not have been granted in favor of a nurse and jail guard who did 'literally nothing' for an inmate who claimed to be in such extreme back pain he could not move and thus allowed him to sit in extreme pain for an hour and a half.

Here, viewing the evidence in a light most favorable to the Plaintiff, he alleges that he saw Defendants Phelps and Gardiner a relatively short time after the physical altercations.  A form from their encounter suggests Plaintiff saw them at 11:42a.m., which was approximately an hour after the fight in the cellhouse. (Doc. 162-7 at 1).  Plaintiff claims that he asked the two for medical care during a face-to-face interview.  Although the interaction only lasted two to three minutes because he allegedly refused to speak with the two, there is no contention that they were unable to observe him during the interview.  Plaintiff alleges that the two could clearly see that he was in physical distress. He argues that photographs show his distress.  (Doc. 141-2 at 29-31).  Although the photographs are not very clear, the medical notes from Plaintiff's intake at Pontiac indicate that his right eye was red and swollen.  This provides at least some support for Plaintiff's assertion that he had visible injuries.  Additionally, he verbalized his distress. As with the jail guard in *Lewis*, Phelps and Gardiner's alleged total inaction cannot be excused at summary judgment.  Plaintiff claims that his whole body was covered in

pepper spray, that he was still suffering from pepper spray when he saw Phelps and Gardiner, and that they ignored or refused to act on his pleas for help. He also complains of wrist pain, and other swelling and bruising on his body. These assertions, taken in Plaintiff's favor, create a genuine dispute about whether Phelps and Gardiner knowingly ignored a condition that was causing Plaintiff serious pain, and made him suffer for a longer time than necessary.

It is worth mention that Defendants argue Plaintiff had a chance to shower before meeting with Phelps and Gardiner. Plaintiff testified during his deposition that he was placed in a shower which was "cut on," but he also testified just moments later that he was not able to rinse the pepper spray off of his body. (Doc. 162-3 at 86:17-25; 87:14-18). There is no other evidence to confirm or deny whether Plaintiff actually washed himself while in the shower. Accordingly, this brief mention of a shower is not sufficient to show that Phelps and Gardiner somehow believed the pepper spray had been removed. It is interesting that Plaintiff alleges that Phelps saw him in the shower area and Phelps took photographs there (Doc. 162-2 at 86:12-13), but Phelps does not acknowledge this assertion either in the motion or in his affidavit. Instead, Phelps and Gardiner both state Plaintiff appeared normal and had no observable injuries. (Doc. 162-8; Doc. 162-9). These assertions of no observable injuries are contradicted by affidavits Plaintiff submitted, as well as by the intake records from Pontiac. Therefore, the Court denies summary judgment on behalf of Phelps and Gardiner.

     v.     Claim 7:     Hunziker violated Plaintiff's rights under the Eighth Amendment by using excessive force against him during his transport to Pontiac on June 16, 2017.

The Defendants argue that Hunziker is entitled to summary judgment because the sole claim against him is one for excessive force, and Plaintiff admitted that Hunziker did not punch or kick him at his deposition. In response, Plaintiff makes much of the fact that Hunziker did not get him medical care, that the transport van was too small, and that he was denied access to the bathroom, but none of these allegations amount to excessive force. Given Plaintiff's own statement at his deposition that Hunziker did not strike him, there is no genuine dispute about whether Hunziker utilized excessive force. Accordingly, summary judgment will be granted in Hunziker's favor on Claim 7. No claims remain against Hunziker.

     vi.     Claim 5:     Regelsberger and Pappas denied Plaintiff adequate medical care for the injuries he sustained in the prison guard assault at Menard on June 16, 2017;

Regelsberger and Pappas contend that they are entitled to summary judgment because Plaintiff did not have a serious medical condition, they did not have actual knowledge that he had a medical need, and they would not have been qualified to render care other than mental health care. They also add that if he had reported injuries or if he had observable injuries during his suicide potential evaluation on June 16, their chart would have reflected any such condition. In response to the Wexford Defendants' Motion for Summary Judgment, Plaintiff contends that even if they were not medical professionals, they still had a duty not to turn a blind eye to his obvious injuries and

distress.  He alleges that their records of talking with him on June 16, 2017, were falsified as an attempt to cover up the whole incident.   Plaintiff also adds that Regelsberger and Pappas have merely attempted to throw everything at the wall to see what sticks.

At this phase of the case, the Court must determine if there is a genuine dispute of material fact about Regelsberger and Pappas' conduct under the Eighth Amendment standard of deliberate indifference to a serious medical need.   The inquiry is more nuanced than it appears.  Regelsberger and Pappas were mental healthcare professionals, so as Plaintiff correctly pointed out, they may not be held to the standard of a traditional doctor or nurse, but they at least have a duty not to turn a blind eye to a serious need that is obvious to a layperson. *Orlowski*, 872 F.3d at 423.  Regelsberger and Pappas contend that Plaintiff did not possess a serious medical need.  This argument is a bit perplexing in light of the accompanying claims that Pappas did not see Plaintiff in person at all on the day in question (Wexford SUMF, Doc. 165 at 7 ¶¶ 22-23), and Regelsberger saw him only briefly but does not remember where the evaluation occurred (Wexford SUMF, Doc. 165 ¶¶ 20-21, 24-25).  The records are not sufficient to demonstrate the existence or lack of a serious medical condition, because there are hardly any medical records at all concerning Plaintiff's immediate condition.   Reading the record in Plaintiff's favor, multiple sources report that his right eye was red and visibly swollen, the intake notes at Pontiac show redness and swelling, and Plaintiff received extensive treatment after the fact to address concerns about his right eye by outside care providers.  These facts create at least a genuine dispute about whether he had a serious medical condition.  He also

alleges he had extreme wrist pain for which he later received x-rays, as well as other bruising and swelling.

Regelsberger and Papas argue that they did not exhibit deliberate indifference towards a serious need.  Plaintiff counters that they exhibited deliberate indifference by failing to attempt to get him care from others and by ignoring his physical condition.  If the only interaction with these defendants was the brief moments when Plaintiff was brought to the healthcare unit and apparently taken away, then the Court could conclude that the defendants did not exhibit deliberate indifference to any medical needs because they were in the presence of other medical officials who apparently deemed care unnecessary.  The record supports a finding that Pappas did not have any interaction with Plaintiff outside of his brief stop at the healthcare unit.  Thus, the Court finds it appropriate to grant summary judgment in favor of Pappas because at most she had a brief encounter with Plaintiff in the presence of numerous other medical officials.  While Plaintiff is correct that a prison employee cannot turn a blind eye, Pappas did not turn a blind eye in the event she deferred to colleagues that had more medical knowledge than she did who were in her immediate presence during a brief two-minute encounter as Plaintiff passed through the healthcare unit.

By contrast, Regelsberger claims that she attempted to speak with Plaintiff around 11a.m. on June 16.  The Wexford Defendants represent that on or around June 16, 2017, all offenders at Menard were being screened before placement in segregation, as was Plaintiff on June 16.  Regelsberger apparently does not remember when or where she attempted to conduct the screening interview with Plaintiff.  She opines that it could have

occurred in the healthcare unit, or at a cell.  By officer reports, the physical altercation occurred around 10:30am, and by 11:42a.m. Plaintiff was already speaking to Phelps and Gardiner.  Plaintiff did not personally report that he had a mental health evaluation separate from his stop in the healthcare unit between 10:30 and 11:42.  The timing of the report cannot be explained on the record alone.  Because the timing of the report cannot be explained, the Court is then left with competing assertions about whether the encounter even happened, and whether Regelsberger accurately documented Plaintiff's condition and his requests.

For context, the Court notes that amongst Plaintiff's mental health records there were at least ten suicide potential evaluations conducted.  Just two days prior to this incident with the guards, notes on a suicide potential evaluation indicate that Plaintiff had just returned from the hospital after suicide attempt via an overdose on medication. (Doc. 165-4 at 70-73).  Additionally, once Plaintiff arrived at Pontiac, he reported problems related to the alleged assault by staff at Menard, and he allegedly attempted suicide the morning of June 17, 2017, by hanging himself.  (Doc. 165-4 at 79-81).  There are detailed notes from meetings with mental health staff at Pontiac in the days following his arrival there.  These records call into question the validity of the June 16, 2017, report that Plaintiff simply refused to speak to staff.

Regelsberger averred that she has no recollection of interacting with Plaintiff on June 16 beyond her notes that he refused to speak with her.  She alleges that if she had noticed physical signs of injury, or if she had seen him more than once that day, she would have noted it.  She does not recall where in the prison she encountered him.  By

contrast, Plaintiff testified at his deposition that he only saw Regelsberger for two or three minutes in the healthcare unit where she was a bystander.  He alleges that he never received any kind of evaluation from her on June 16, and that her report of an evaluation was falsified.  This factual dispute is important to the extent that it leaves open the question of whether Regelsberger had an opportunity to observe physical ailments or to secure care for Plaintiff.  In support of the assertion that he had observable injuries, Plaintiff submitted multiple affidavits from fellow inmates who aver that they could see redness and swelling of his eye, and they could hear him verbally complain about other injuries.  Accordingly, summary judgment will be denied to Regelsberger because there is a genuine dispute of fact about whether she saw Plaintiff at all, and if she did, what she observed, and if she was deliberately indifferent in response to her observations.

Based on the foregoing analysis, summary judgment will be granted in part and denied in part.

### DISPOSITION

In summary, Plaintiff's Motion for Summary Judgment (Doc. 141) will be **DENIED**.

The IDOC Defendants' Motion (Doc. 162) will be **GRANTED** in **PART**, summary judgment will be granted on Claim 3 to Purdom, on Claim 4 to Samuels, and on Claim 7 to Hunziker; and, summary judgment will be **DENIED** in **PART** on Claim 2 to Purdom, Rigdon, Edwards, Holle, Mallory, Weaver, on Claim 3 to Holle, Mallory, and Weaver, and on Claim 5 to Gardiner and Phelps.  The IDOC Defendants' Motion for Leave to File or Substitute (Doc. 161) will be **GRANTED**.  The Motion (Doc. 161) seeks to replace

unsigned declarations by Defendants with signed copies.  There is no objection.  The Clerk of Court is **DIRECTED** to docket the proposed substitute exhibits.

The Wexford Defendants' Motion will be **GRANTED** in **PART** on claim 5 to Pappas, and **DENIED** in **PART** on claim 5 to Regelsberger.

**IT IS SO ORDERED.**

Dated: July 25, 2022

DAVID W. DUGAN
United States District Judge