045083/19344/TPD/AJM

U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

WILLIAM BUCK, #R21689,

Plaintiff,

v.

SGT. RIGDON, C/O PUXDOM, C/O EDWARDS, C/O MALLORY, C/O HALLE, C/O WEAVER, HUNZICKER, LT. SAMUELS, I.A. GARDINER, I.A. PHELPS, MS. PAPPAS, MISS R., and WARDEN MENARD CORRECTIONAL CENTER,

Defendants.

Case Number 3:18-cv-02125-DWD

Judge David W. Dugan

**RESPONSE TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE INSTRUCTION**

COMES NOW Defendant, CHELSEA REGELSPERGER, by and through her attorneys, CASSIDAY SCHADE LLP, and for her Response to Plaintiff's Motion for Adverse Inference Instruction [Doc. 237], states as follows:

1. On March 5, 2024, Plaintiff filed his Motion for Adverse Inference Instruction. [Doc. 237] In this Motion, he requests the Court to sanction Defendants for spoliation, including instructing the jury at trial that it should be allowed to draw an adverse inference in favor of Plaintiff from the purported destruction of video evidence that was relevant to and would support Plaintiff's claims. [*Id.*]

2. First, throughout Plaintiff's Motion, he groups all Defendants together. He does not separate the IDOC Defendants from Defendant Regelsperger, the remaining Wexford Defendant. Wexford Health Sources, Inc. ("Wexford") contracts with Illinois to provide certain healthcare in Illinois Department of Corrections prisons. Defendant Regelsperger is an employee

of Wexford, not the IDOC. Given this distinction, Defendant Regelsperger cannot be grouped together with the IDOC Defendants with respect to the requested adverse inference instruction.

3. In Plaintiff's Complaint and at his deposition, Plaintiff alleges that he was brought to the Health Care Unit by security staff and that while in the Health Care Unit, he asked a group of medical and mental health staff, including Defendant Regelsperger, for medical treatment for his alleged injuries. [Doc. 1, p. 11; Doc. 165-1, pp. 167:9-169:4]

4. Plaintiff's request for adverse inference instruction involves his belief that the footage from the North 2 Cellhouse was not retained even though he believes that such footage would be relevant to this lawsuit. Specifically, he claims that the footage from North 2 Cellhouse would have recorded footage of "(1) Buck's physical condition as he was taken to the shower room there; (2) corrections officers threatening him while he was in the shower room; (3) Buck's condition while he was being walked from the shower room to a cell on a different floor; (4) Buck's condition when he was placed in the North 2 cell and then removed from there hours later; and (5) the absence of any medical treatment provided to Buck at the cell." [Doc. 237, pp. 1-2] Plaintiff makes no claims that there was any footage of his alleged interactions with Defendant Regelsperger in the Health Care Unit. Further, he makes no allegations that he had any alleged interactions with Defendant Regelsperger in the North 2 Cellhouse.

5. Plaintiff argues that the "internal affairs officers' failure to preserve the evidence should be imputed to Defendants." [*Id.* at p. 7] Plaintiff's reasoning that the failure to preserve should be imputed to Defendants is that "the State is providing Defendants' defense in this case, as evidenced by their representation by the Office of the Illinois Attorney General" and "the State will indemnify Defendants against Buck's claims arising out of their employment pursuant to the Illinois State Employee Indemnification Act, 5 ILCS 350/2(a)." [*Id.* at p. 10]

6. The footage of the North 2 Cellhouse, presuming that Plaintiff appeared in any footage taken in North 2 Cellhouse on June 16, 2017, is irrelevant to Plaintiff's claims. During Plaintiff's deposition, he testified that when he arrived at North 2, Officers Holle and Mallory handed him off to other non-party officers who worked in North 2. [Doc. 165-1, pp. 87:24-88:6] None of the Defendants (IDOC Defendants nor Defendant Regelsperger) had any duty to preserve or review the video footage from North 2 Cellhouse. Further, none of the Defendants, including Defendant Regelsperger, nor the IDOC acted in bad faith in failing to preserve unrelated video footage after the incident had been resolved, and is unrelated to Plaintiff's claims.

7. Additionally, the case law does not support the conclusion that the internal affairs officers' failure to preserve the evidence should be imputed to Defendant Regelsperger. Defendant Regelsperger is an employee of Wexford (a contractor to the IDOC), and is not an IDOC employee, thus, there is no "uniquely intertwined relationship" between Defendant Regelsperger and the IDOC. *See Johns v. Gwinn*, 503 F. Supp. 3d 452, 463 (W.D. Va. 2020). Additionally, at no time during her employment as a Behavioral Health Technician has Defendant Regelsperger had any involvement in security, security duties, nor video preservation/retention. Furthermore, she is not represented by the Office of the Illinois Attorney General, and she will not be indemnified by the State of Illinois if Plaintiff is successful at trial.

8. In support of his argument, Plaintiff cites an Arizona case involving an Eighth Amendment claim against *only* correctional officers who were employed by the Arizona Department of Corrections ("ADC"). *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1102 (D. Ariz. 2014). In *Pettit*, the Court imputed the ADC's spoliation to the correctional officer-defendants, explaining that the ADC was an interested party with control over the evidence, the State of

Arizona indemnifies its employees for claims arising out of their employment, and the State funds the correctional officers' defense in civil cases arising out of their employment. *Id.* at 1106. This case is distinguishable from the instant case because Defendant Regelsperger is not a correctional officer employed by the State of Illinois; she will not be indemnified by the State if Plaintiff is successful at trial; and she is not represented by the State in this case.

9. Plaintiff then cites a California case involving a prisoner's motion for sanctions against a former warden of the California Institution for Women, the Institution itself, and the California Department of Corrections and Rehabilitation. *Ramos v. Swatzell,* 2017 WL 103014, (C.D. Cal. June 5, 2017). Similar to *Pettit*, the Court held that imputation of the prison's spoliation to the former warden was warranted because the prison controlled access to the information destroyed, the State was providing the former warden's defense, and the State would indemnify him. *Id.* at 19. Again, this case is factually distinguishable from the instant case because Defendant Regelsperger is not a correctional officer employed by the State of Illinois; she will not be indemnified by the State if Plaintiff is successful at trial; and she is not represented by the State in this case.

10. In *Johns v. Gwinn*, the Court explained that "[c]ourts have applied [this] principle in a number of cases to hold that state correctional departments and municipalities 'ultimately bear responsibility for preserving evidence and litigating cases filed by prisoners,' and so their failure to preserve evidence may be imputed to *individual officer defendants* 'in order to avoid unfair prejudice' to inmate litigants." *Johns*, 503 F. Supp. 3d at 463 (emphasis added). The Court in *Johns* reasoned that the spoliation of evidence by a state correctional department was properly imputed to an *individual officer* due to the "uniquely intertwined relationship" between the correctional department and its officers. *Id.* The instant case is again distinguishable because

there is no "uniquely intertwined relationship" between Defendant Regelsperger and the State of Illinois or the IDOC as she is employed by Wexford, not the State.

11. Thus, for these reasons, it would be prejudicial to impute any alleged failure of the Illinois Department of Corrections Internal Affairs Department from preserving any video footage onto Defendant Regelsperger.

12. For the foregoing reasons, Defendant Regelsperger respectfully requests that the Court denies Plaintiff's Motion for Adverse Inference Instruction.

WHEREFORE, Defendant respectfully requests that the Court denies Plaintiff's Motion for Adverse Inference Instruction [Doc. 237] and for such other and further relief deemed appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Alison J. Matusofsky
One of the Attorneys for Defendant, CHELSEA REGELSPERGER

Alison J. Matusofsky
ARDC No. 6337131
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
amatusofsky@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2024, I electronically filed the foregoing Response to Plaintiff's Motion for Adverse Inference Instruction with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

Kyrstin Beasley
Assistant Attorney General
Metro East Office
201 West Pointe Drive, Suite 7
Belleville IL 62226
(618) 236-8781 Phone
(618) 236-8620 Fax
Kyrstin.Beasley@illinois.Gov

Christine G. McClimans
Assistant Attorney General
201 West Pointe Dr. Suite 7
Swansea IL 62226
(618) 236-8788
Christine.McClimans@ilag.gov

Daniel T. Fenske
Sophia Orelo
Daniel Rottenberg
Elaine Cleary
Mayer Brown LLP
71 S. Wacker Dr.
Chicago IL 60606
312-701-8926
dfenske@mayerbrown.com
sorelo@mayerbrown.com
drottenberg@mayerbrown.com
ecleary@mayerbrown.com

/s/ Alison J. Matusofsky

11772023